Well, I think we should let you proceed. This one is set for 15 minutes per side. And I also thank both of you for traveling to be here. Thank you. And Mr. Bolas, for your acceptance of this pro bono appointment. Yes. Thank you, Your Honor. Yes. Good morning, Your Honors. May it please the court, Michael Bolas, Covington, and Burling on behalf of the plaintiffs. I would like to reserve two minutes for rebuttal. I will keep an eye on the clock myself. There are two issues here. I'd like to start first with the equal protection issue, and then I'll move on to appointment of counsel. Selectively preventing only some inmates from reviewing their own medical records is irrational. And the defendants have not put forward a legitimate government interest rationally related to their unequal medical records access policy. There is no indication in the record that the unequal access policy contributed to settlement of the Bala litigation. Similarly, there is no indication in the record that the unequal access policy contributed to constitutional conditions of confinement at ISCI, or that it helps the department avoid legal liability. Finally, the defendants cannot justify their unequal access policy by reference to their need to adhere to the modified compliance plans, the MCPs, as part of the Bala litigation. There are two reasons for that. First, the MCPs do not impose any limitation on any inmate's ability to review medical records at facilities other than ISCI. And second, because the department has taken the position that the MCPs expired on September 1st, 2017, during the pendency of this district court litigation. In conclusion, there is no rational basis for the unequal access treatment. This court should also reject the defendant's contention on appeal that, as a matter of law, ISCC inmates are not similarly situated to inmates at ISCI. The defendants say that the inmates are not similarly situated because of the Bala injunction. That is not right, and also for two reasons. First, as to the historical Bala injunctions, this is pretty much pre-MCPs, those orders did not include a medical records access provision. And for that reason, the historical injunctions cannot situate the inmates differently with respect to each other regarding medical records access. As to the modern incarnation of Bala, which is the MCPs, as I mentioned earlier, the department has represented that those MCPs expired on September 1st, 2017, and so for that reason, cannot situate the inmates differently with respect to medical records access. For these reasons, the court should reverse the grant of summary judgment on the equal protection claim and remand for further proceedings. You stated, counsel, and correct me if I'm misunderstanding what you just said, but you said that the question is there's no rational basis for the denial of access to medical records. As I see it, this appeal really presents the question of whether there's rational basis to support the disparate treatment between the two facilities. Correct? Is it the latter question that we're really grappling with here? Well, I think that the, consistent with this court's precedent in Whitmire, it is appropriate to inquire as to whether or not the department is able to articulate a reason for the unfavorable treatment, the differential unfavorable treatment. That is what this court observed in Whitmire when there was not a reason put forward in a rational connection for, for example, treating some inmates less favorably if they were visiting with the same sex partner versus visiting with an opposite sex partner. So I do think it's appropriate in this case to evaluate to what end is the unfavorable treatment accomplishing. And the rational basis that the government relies on this particular case is compliance with the settlement agreement, with the Bala lawsuit and trying to avoid liability that would arise from that. Is that not a rational basis? Well, first of all, denying access to records at IACC doesn't contribute to achieving that end. And I think the other issue also is the fact that the MCPs, according to the department, were not in effect when this case was decided. So I don't think that the defendants can say that there is no tribal issue of fact and the case should be affirmed based on the MCPs when the department says those MCPs were not in force. And in fact, the department has said they've continued to abide by those policies even after they expired. So that kind of breaks the nexus between this offering access to medical records at IACI. And if they say it's because the MCPs, when in fact those were not in force and they continued to do it anyway. If we decide that the district court properly granted summary judgment, is there any reason to reach the appointment of counsel issue? I do think that the appointment of counsel issue provides an independent basis for remand because the district court's order refusing to make a compulsory appointment, there are two legal errors with that. First, the threshold question is a legal matter, whether or not courts possess inherent power. I think that's erroneous for the reasons explained in Naranjo and in the brief. But then also the alternative basis in the district court's order refusing to make a compulsory appointment, the district court did not grapple with the issue of the complexity of this litigation and how difficult it is for an untrained inmate plaintiff incarcerated at IACC to prosecute this case effectively. Well, that may be so, but if we affirm on summary judgment, what would we send it back for? Well, I do think that the summary judgment order would need to be vacated for failure to evaluate properly whether or not counsel was warranted. Partly because, for example, there is a declaration in the record in front of the said in a sworn statement that he was moved from IACI to IACC because the prison official said that they wanted to move problematic people out of IACI to IACC. And that was not investigated at all, as far as I can tell by the plaintiffs in this case. I'm not sure, you know, as inmates, if they would really even be able to access that sort of confidential information from the department, given that they're in the department, and that demonstrates that there could have been evidence developed supporting facts that there was an illegitimate basis for having a non-records access facility and potentially moving people there if there was an issue with the medical care they were receiving at IACI. Counsel, I recall somewhere in the record that your client, one of your clients, boasted about the fact that he had been involved in the prior injunction and that he knew something about the legal landscape, so to speak. What do you say about that? Is this right, that Mr. Dienstra was a class representative in the ball litigation when he was housed at IACI? And I believe that involved, for example, attending meetings with some of the prison officials and with class counsel. I think it's not fair to make a leap, though, that he has the knowledge and skills necessary to prosecute this case, not from IACI, but from a mile away at IACC, when he does not have insight into what is going on at IACI or full appreciation of the history of the ball litigation and the orders at issue here and the prison administrators in moving inmates from one facility to the other. That would require taking depositions, propounding contention interrogatories, propounding document requests. I don't think that he has the skills and I don't think that the defendants would be willing to provide that level of information to an inmate in their custody. And so for those reasons, I don't think that his prior history of having been a class rep establishes that he possessed the requisite skill to prosecute a complex civil rights case like this one. Didn't he boast that people would come to him every day for help with their cases? The inmates did come to him with questions about BALA. I mean, I don't think that the opinions of those inmates to ask him about the history of BALA speaks to his skills as a litigator to be able to take discovery and potentially uncover evidence of an illegitimate basis for the differential treatment. The alternative basis that the court ordered, the fact that the district court did not consider the complexity, the failure to consider both factors, this court before has considered appointment and did not consider the two factors that this court has set out, that being the likelihood of success and the skills and complexity of the inmate plaintiff. So this has happened before in the Clemens versus Hill case, which is cited in the opening brief. And it also happened in the Wright versus Director of Corrections case cited in the opening brief. In those cases, the district courts consider only one of the two factors. And this court pointed to that as a reason to vacate and remand in those cases. And I think that the same outcome should obtain here for the reasons I just described, given the complexity of these issues and the fact that the plaintiffs did not investigate at all potential evidence of an illegitimate government motive. If there are no further questions, I'd like to reserve the rest of my time for rebuttal. I wanted to ask you one question about pro bono counsel. I assume that you were voluntarily selected on this case? That's correct. My Ninth Circuit appointment was voluntary. Thank you. Now, Mr. Klaas for the State. Good morning. My name is Oscar Klaas. I'm a deputy attorney general for the state of Idaho, and I represent the appellees in this matter. The entry of summary judgment on the appellant's equal protection claim was proper and should be upheld by this court. The district court properly applied rational basis review and determined that IDOC's decision to agree to an exception to its policy regarding inmate medical record review for one prison, but not others, was a legitimate government purpose for settling litigation and avoiding potential liability under this court's holding in Beard v. Walker. I would like to focus my time today on IDOC's policy about prisoner review of medical records and the impact the BALA settlement and the BALA case has on that, because I think it provides a context for the court to be able to see how the district court arrived at its decision that this was a rational or under rational basis review that this was a legitimate government purpose. IDOC's policy is very simple. Prisoners are not allowed to review medical records. That's based on Idaho law and the Idaho Public Records Act. The policy is applied equally among all prisoners at all prisons in the Idaho Department of Correction. In 2012, in order to settle an episode of litigation in the BALA case, IDOC agreed to a stipulated settlement that included a provision that would permit inmates at ISCI to review medical records as a mechanism to assist in measuring compliance in BALA. The stipulation, I think, the stipulation was reviewed and adopted by the court. I think that's important for the court to note that this was not just merely a settlement or a contract between the parties, whether it was reviewed and adopted by the district court and entered as part of the prospective relief. So violation of the BALA modified compliance would also result in contempt proceedings against the Department of Correction. The effect of this was a tacit suspension of the IDOC policy that prohibits inmates from reviewing medical records. It's temporary in nature as the relief in BALA is temporary. That's to say, when BALA is finally resolved, then this exception will also go away. Further, and I think it's important for the court to know, that BALA only concerns the conditions at one IDOC facility. BALA has never been applied to other IDOC facilities. In fact, the class for BALA are the current inmates at ISCI. So when an inmate is transferred to ISCI, he automatically becomes a part of the class.  When he leaves the class, he leaves those protections and the modified compliance plans that are in place to help assure constitutional conditions exist at ISCI. With this in mind, the district court properly relied on Walker v. Beard for the legal principle that settling litigation to avoid potential liability is a legitimate government interest. I forgot to mention earlier when talking about the BALA case, in this 2012 settlement, the So I think it's reasonable to, it's reasonable to, for this court to see and for the district court to see that liability wasn't far-fetched in this instance, but it was a real possibility that IDOC could face contempt proceedings and be forced to pay attorney fees for the class counsel in BALA. Counsel, I have a question, if I may. In the BALA case, was there evidence that at this other prison, the prison involved in that case, that there had been alteration of medical records? Your Honor, I believe, I have to admit some of my limited knowledge in BALA is not representing the department in that, but I believe you are correct that at one instance in BALA, there was a finding that there had been an alteration of medical records by a staff member and that one of the reasons to assure, to put in place this ability to review for prisoners at the facility that involves BALA was to be able to make sure that there was compliance with, or there wasn't any more instances of that and that the prisoners had a mechanism to be able to make that assurance. I see. Okay. Thank you. As far as the idea of compelled counsel, IDOC does not concede that the court has the inherent authority to compel counsel to represent indigent parties without pay. The position of the department is even if such an inherent authority existed, the district court did not abuse its discretion in refusing to appoint compelled pro bono legal representation. Abuse of discretion requires an erroneous interpretation of law or an erroneous findings of fact. The district court first made clear that it disagreed with the finding in Naranjo that this inherent authority exists, but it still considered the possibility and under Naranjo, the only requirement that was set forth was that a court consider the possibility of compelling counsel. The court certainly did that and rejected it. The idea that the court didn't address the complexity of the case, I believe that the record belies that. I also believe that the stage where the court has been prepared to enter summary judgment, whether a case is complex or not, bears little bearing because it has no merit. If there's no merit to a case, there's no real complexity. So that argument that the district court didn't consider both prongs ultimately is not availing. The one other thing I would like to address is counsel has mentioned several times that the position of the department is the BALA, the modified compliance plans are ineffective. That is an argument that's been made in the BALA termination proceedings. That that is set for a hearing in January for a 10 day evidentiary hearing. It's an argument made by the Department of Corrections, but it's not necessarily been a finding by any court. So I would like to address counsel's reference to that and if the court doesn't have any further questions, I would, I would gladly sit down. I have no questions. I have no questions. I have no questions. Thank you. Thank you. I'd like to address opposing counsel's reference to the someday resolution of BALA and the unequal medical records access policy going away once it's resolved. That does not appear to be consistent with what the department has said to the BALA court. The department said that the MCPs expired on September 1st, 2017, and also that the department, notwithstanding its position that they're expired, that the department has continued to abide by those policy features anyway, which is a way of saying that the medical records at ICI, even when they were not required to by the BALA MCPs and notwithstanding the written policy directive that the defendants appointed to in this case. So that issue about what occurred in 2017 is something that a competent lawyer would have discovered and brought to the court's attention during dependency of this case. No one ever did that, and it's not clear the plaintiffs could do that. So that is a factor in support of concluding that vacating the order is appropriate for failure to consider the complexity of this case. Also, I believe opposing counsel referred to evidence of alteration in records that led to the formulation of the access policy in the MCPs. My understanding, at least what is referred to in the opening brief about the sanctions order against ISCC, that came down during dependency of this district court case in 2015. I think the sanctions order came out in July 2015. That is when the district court found that people at ISCI were improperly manipulating records there. So that was after the MCP access policy, not before it. And finally, on the point that opposing counsel raised regarding the fact that the court need not consider the complexity of the case when evaluating an appointment, and that it's adequate just for the court to conclude that there is no merit, that's not exactly what the district court said. The district court said that they faced an uphill battle. And in fact, earlier on in the litigation, the district court recognized that this was a complex case with novel issues that warranted the appointment of counsel. And so I think the district court's later failure to evaluate that complexity during the inherent appointment motion was legally erroneous and renders that order infirm. If there are no further questions, then I'll yield my time. I have no questions, Judge. Thank you. Thank you, Your Honor. We thank you. I'm going to say thanks again to Appellant's counsel for pro bono time and to Appellee's counsel for traveling in. Both of you made excellent arguments. That case shall be submitted.
judges: Gould, Nguyen, R. Collins